IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | CHAPTER 7 |
| DENNIS LYNN SWARTZ, JR. and WENDY MAY SWARTZ | BANKRUPTCY NO. 24-14190 (PMM) |
| Debtors | |

**OBJECTION OF CHRISTINE C. SHUBERT, CHAPTER 7 TRUSTEE,
TO DEBTORS' APPLICATION TO CONVERT FROM A PROCEEDING
UNDER CHAPTER 7 TO A PROCEEDING UNDER CHAPTER 13**

Christine C. Shubert, Chapter 7 Trustee (the "Trustee") for the estate of Dennis Lynn Swartz, Jr. and Wendy May Swartz (collectively, the "Debtors"), by and through her proposed counsel, Karalis PC, hereby objects (the "Objection") to the Debtors' Application to Convert from a Proceeding Under Chapter 7 to a Proceeding Under Chapter 13 (the "Application"), and in support thereof, respectfully represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over the Application under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

2. The statutory basis for the relief requested in the Application is 11 U.S.C. § 706(a).

**BACKGROUND**

**A.    Procedural Background.**

3. On November 21, 2024 (the "Petition Date"), the Debtors filed for protection under Chapter 7 of the Bankruptcy Code.

4. On November 22, 2024, the Trustee was appointed which appointment remains in effect.

**B.     The Residential Real Property Owned by the Debtors' Bankruptcy Estate.**

5.     The Debtors' bankruptcy estate owns residential real property located at 815 Texter Mountain Road, Robesonia, PA 19551 (the "Real Property"). The Debtors' Schedule A/B: Property is attached hereto as Exhibit "1" and made a part hereof.

6.     The Real Property is situated on more than eighteen (18) secluded acres and consists of four (4) bedrooms, three (3) full baths, a two (2) car garage, an above ground pool and several outbuildings

7.     The Debtors assert that the Real Property has a fair market value of $525,600.00. *See*, Exhibit "1".

8.     The Trustee requested that David Decembrino of RE/MAX of Reading inspect the Real Property. Mr. Decembrino inspected the Real Property and believes that the Real Property has a fair market value in the vicinity of $750,000.00. Zillow.com places the fair market value of the Real Property at $769,000.00 while Redfin.com places the fair market value of the Real Property at $756,000.00.

9.     The Real Property is encumbered by two (2) mortgages in the aggregate amount of $520,224.00. The Debtors' Schedule D: Creditors Who Have Claims Secured by Property is attached hereto as Exhibit "2" and made a part hereof.

10.    As such, there appears to be significant equity in the Real Property for the benefit of the Debtors' bankruptcy estate.

**C.     The Exemption Claimed by the Debtors in the Real Property.**

11.    The Debtors have claimed an exemption in the Real Property in the amount of $5,376.00. The Debtors' Schedule C: The Property You Claim as Exempt is attached hereto as Exhibit "3" and made a part hereof.

2

**D.    The Debtors' Monthly Income and Expenses.**

12.    The Debtors' Amended Schedule I: Your Income and Amended Schedule J: Your Expenses reflect that the Debtors have *zero* monthly net income. The Debtors' Amended Schedule I: Your Income and Amended Schedule J: Your Expenses are attached hereto as Exhibits "4" and "5", respectively, and made a part hereof.

**E.    The Debtors' Unsecured Obligations.**

13.    The Debtors have unsecured debt in the aggregate amount of $283,456.00. The Debtors' Schedule E/F: Creditors Who Have Unsecured Claims is attached hereto as Exhibit "6" and made a part hereof.

14.    The Trustee believes that she can make a meaningful distribution to unsecured creditors through the liquidation of the Real Property. The Trustee's Declaration in Opposition to the Application is attached hereto as Exhibit "7" and made a part hereof.

**F.    The Application filed by the Debtors.**

15.    On February 17, 2025, the Debtors filed the Application [D.I. 18].

16.    The Application states, *inter alia*, as follows:

- Debtors filed for protection under Chapter 7 of the United States Bankruptcy Code on November 21, 2024.

- The case has not previously converted.

*See*, Application.

## OBJECTION

17.    The Trustee respectfully seeks the entry of an Order denying the Application.

I.     **Standard for Conversion from Chapter 7 to Chapter 13 under 11 U.S.C. § 706(a).**

18.    There is no absolute right to convert a bankruptcy proceeding from Chapter 7 to Chapter 13 under 11 U.S.C. § 706(a). *See, Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007).

19.    Section 706(a) of the Bankruptcy Code provides that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." *See*, 11 U.S.C. § 706(a).

20.    Controlling case law instructs that Section 706(a) cannot be read on its own and must be read in conjunction with Section 706(d). *See, Marrama*, 127 S. Ct. at 1110.

21.    Section 706(d) of the Bankruptcy Code states: "Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title ***unless the debtor may be a debtor under such chapter.*** " *See*, 11 U.S.C. § 706(d) ***(emphasis added)***.

22.    As such, 11 U.S.C. § 706(d) conditions a debtor's right to convert on his or her ability to qualify as "a debtor" under Chapter 13. *See, Marrama*, 127 S. Ct. at 1110.

23.    A good faith analysis must be performed to determine whether or not to convert a bankruptcy case from Chapter 7 to Chapter 13. *See, Marrama*, 127 S. Ct. at 1110-1113. *See also, In re Piccoli*, 2007 U.S. Dist. LEXIS 72533, 2007 WL 2822001, *6 (E.D. Pa. 2007).

24.    The Third Circuit recognizes that "the good faith inquiry is a fact intensive determination ..." *See, In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996) (*quoting In re Love*, 957 F.2d 1350, 1355 (7th Cir.1992)).

4

25. In *Marrama*, the Supreme Court declined to articulate exactly what conduct qualifies as bad faith sufficient to permit a bankruptcy judge to dismiss a case or deny conversion from Chapter 7. *See, Marrama*, 127 S. Ct. at 1112 n.11.

26. The Third Circuit has held that a debtor bears the burden of establishing good faith. *See, Integrated Telecom Express, Inc.*, 384 F.3d 108, 114 (3d Cir. 2004). *See also, Piccoli*, 2017 U.S. Dist. LEXIS 72533, at *11.

27. The Third Circuit has recognized that "good faith is a term incapable of precise definition." *See, Lilley*, 91 F.3d at 496.

28. In the Third Circuit, bankruptcy courts reviewing motions to convert under §706(a) generally follow the "totality of the circumstances" analysis for bad faith articulated by the Third Circuit in *In re Lilley*, 91 F.3d 491 (3d Cir. 1996), where the court addressed bad faith warranting dismissal of a chapter 13 case "for cause" under § 1307(c) of the Bankruptcy Code. *See, Piccoli*, 2007 U.S. Dist. LEXIS 72533, at *16-*17 (*citing Pakuris*, 262 B.R. at 335; *In re Porreco*, 333 B.R. 310 (W. D. Pa. 2005)).

29. Applying the *Lilley* totality of the circumstances test to conversion, the *Pakuris* court articulated the considerations as follows:

> (a) whether the debtor is seeking to convert to chapter 13 in good faith (including a review of facts such as the timing of the motion to convert; the debtor's motive in filing the motion; and whether the debtor has been forthcoming with the bankruptcy court and creditors);
>
> (b) whether the debtor can propose a confirmable chapter 13 plan;
>
> (c) the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion;
>
> (d) the effect of conversion on the efficient administration of the bankruptcy estate; and
>
> (e) whether conversion would further an abuse of the bankruptcy process.

5

*See, Pakuris*, 262 B.R. at 335-336. *See also, In re Campbell*, 598 B.R. 775, 778-79 (Bankr. M.D. Pa. 2019).

**II.    Conversion from Chapter 7 to Chapter 13 is not Warranted under the Facts of this Case.**

30.    Applying these strictures to the case at hand, the Debtors' conversion request must be denied.

**(1)    The Debtors are not seeking to Convert to Chapter 13 in Good Faith.**

31.    The Debtors filed the Application only after the Trustee changed this case to an "Asset Case".

32.    The Debtors filed the Application only after the Trustee retained counsel to liquidate the Real Property for the benefit of the Debtors' bankruptcy estate.

33.    A debtor's attempt to convert from Chapter 7 to Chapter 13 is not made in good faith when there is "suspicious" timing given that it was sought only after the debtor learned that a chapter 7 trustee intended to pursue the equity in a home. *See, Piccoli*, 2007 U.S. Dist. LEXIS 72533, at *19-*20.

34.    The Debtors severely undervalued the fair market value of the Real Property.

35.    Quite simply, the Debtors have not been forthcoming with the Bankruptcy Court and creditors.

**(2)    The Debtors cannot propose a Confirmable Chapter 13 Plan.**

36.    As set forth herein, the Debtors have *zero* net monthly income. *See*, Exhibits "4" and "5".

37.    In the event that the Real Property were to sell for $750,000.00, the net sale proceeds to the bankruptcy estate would be approximately $150,000.00 after taking into account the exemption, the two (2) mortgages and closing costs.

6

38. Quite simply, the Debtors do not have any net monthly income to comply with the provisions of 11 U.S.C. § 1325(a)(4).

39. As such, the Debtors cannot propose a confirmable Chapter 13 Plan.

**(3)** **Prejudice to Creditors.**

40. Creditors will be severely prejudiced if the Debtors' conversion request is granted.

41. The Debtors do not have any net monthly income to fund a Chapter 13 Plan in accordance with 11 U.S.C. § 1325(a)(4).

42. The only hope for recovery to creditors will come from the liquidation of the Real Property with proceeds in the approximate amount of $150,000.00.

**(4)** **The Effect of Conversion on the Administration of the Bankruptcy Estate.**

43. The Trustee can expeditiously liquidate the Real Property for the benefit of the Debtors' bankruptcy estate.

44. Conversion of this case to Chapter 13 would significantly delay the administration of the Debtors' bankruptcy estate to the detriment of the creditors and put them at risk of non-payment.

**(5)** **Conversion would be a Further Abuse of the Bankruptcy Process.**

45. As set forth herein, the Debtors only filed the Application after the Trustee changed this case to an "Asset Case" and retained counsel to liquidate the Real Property.

46. The Debtors massively undervalued the fair market value of the Real Property.

47. Allowing the Debtors to convert this proceeding would clearly be another abuse of the bankruptcy process.

48. No party in interest would benefit from the Debtors converting their case to Chapter 13.

49. In fact, the entire creditor body will be negatively impacted in the event of conversion.

50. The Trustee is clearly in the best position to liquidate the Real Property for the benefit of the Debtors' bankruptcy estate and creditors.

## CONCLUSION

51. For all of the reasons set forth herein, the Debtors' conversion request must be denied.

**WHEREFORE**, the Trustee respectfully requests the entry of an Order (a) denying the Application and (b) granting such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**KARALIS PC**

By: /s/ Robert W. Seitzer
ROBERT W. SEITZER
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
rseitzer@karalislaw.com

*Proposed Attorneys for the Trustee*

Dated: February 18, 2025