**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 24-13093 |
| Alan Christopher Redmond, | : | Chapter 11 |
| | : | |
| Debtor. | : | |

_____

| | | |
|---|---|---|
| United States Small Business | : | |
| Administration, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. No:  25-0119 |
| | : | |
| Alan Christopher Redmond, | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

AND NOW, this _____ day of _____, 2026, upon

consideration of the Motion for Summary Judgment filed by plaintiff United States

Small Business Administration (SBA), as well as defendant Alan Redmond's response

thereto, if any, it is hereby ORDERED that SBA's motion is GRANTED. It is further

ORDERED as follows:

1. Count I of SBA's complaint is entered in favor of SBA and against the

   Defendant; and

2. Defendant's COVID-19 Economic Injury Disaster Loan debt owed to SBA is

   hereby declared non-dischargeable under 11 U.S.C. § 523(a)(2)(B).

BY THE COURT:

_____

Hon. Patricia M. Mayer
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| In re: | : | Bankruptcy Case No. 24-13093 |
| Alan Christopher Redmond, | : | Chapter 11 |
|  | : |  |
| Debtor. | : |  |

_____

|  |  |  |
|---|---|---|
| United States Small Business Administration, | : | |
|  | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | |
| v. | : | Adv. No:  25-0119 |
|  | : | |
| Alan Christopher Redmond, | : | |
|  | : | |
| Defendant. | : | |

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil

Procedure 56, the United States of America, on behalf of the United States Small

Business Administration (SBA), hereby moves for summary judgment on Count I of

SBA's complaint.

The basis for this motion is fully set forth in the attached memorandum of law.

Dated: August 7, 2026                   Respectfully submitted,

DAVID METCALF
United States Attorney

_/s/ Mark C. Priebe_
ANTHONY ST. JOSEPH
MARK C. PRIEBE
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8267/8412 (St. Joseph/Priebe)
Anthony.StJoseph@usdoj.gov
Mark.Priebe@usdoj.gov

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| In re: | : | Bankruptcy Case No. 24-13093 |
| Alan Christopher Redmond, | : | Chapter 11 |
|  | : |  |
| Debtor. | : |  |

_____

|  |  |  |
|---|---|---|
| United States Small Business Administration, | : | |
|  | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | |
| v. | : | Adv. No:  25-0119 |
|  | : | |
| Alan Christopher Redmond, | : | |
|  | : | |
| Defendant. | : | |

## I.     INTRODUCTION

Debtor/Defendant Alan Redmond (Redmond or debtor) continues to live in a swirl of both civil and criminal litigation. Most of it stems from his dubious financial practices over the past decade and multiple companies of which he served as the owner and/or principle. The United States Small Business Administration (SBA) moves for summary judgment in one discreet portion of that litigation, asking this Court to find Redmond's debt to SBA nondischargeable under 11 U.S.C. § 523(a)(2)(B) because he obtained the funds through fraud.

Over 18 months ago, SBA initiated this action against Redmond seeking a determination that nearly $2 million owed to it by Redmond is non-dischargeable. Since that time, following informal disclosures received from his former counsel, Redmond has refused to provide *any* additional information supporting either a) his basis for obtaining the SBA loan, or b) that those funds were used in accordance with his loan

agreement. Redmond has refused to do so despite (1) the Court's order over two months ago instructing him to produce discovery "without further delay," ECF No. 47; and (2) failing to assert any formal objection to discovery, claiming only via motion that he needs substitute counsel in his related criminal proceeding to review his answers for "Fifth Amendment considerations." ECF No. 46.

Nonetheless, based on Redmond's documentation and testimony provided in his related bankruptcy proceedings and other litigation, he made material misrepresentations to SBA when he initially applied for the loan — ones that plainly indicate an intent to deceive. Specifically, Redmond represented in his initial 2020 loan application that Bene Market LLC earned $20,000,000 in sales during the preceding 12 months — a representation belied by his subsequent testimony, internal profit and loss statements, and 2019 and 2020 tax filings that indicate a significantly lower amount of gross sales. For this reason, among others, the Court should find that, based on the preponderance of the evidence, Redmond's debt to SBA is non-dischargeable under 11 U.S.C. § 523(a)(2)(B) and enter an order in favor of SBA on Count I of its complaint.[1]

## II.    BACKGROUND

SBA initiated this action seeking a determination that the debt owed to it by Redmond is non-dischargeable under 11 U.S.C. § 523(a)(2)(B). From 2020 through 2022, Redmond – on behalf of Bene Market and as guarantor of the loan increases in 2021 and 2022 — applied for and received an SBA loan and two subsequent modifications ultimately totaling $1,950,000. ECF Nos. 1-2–1-6. SBA alleges that

---

[1] SBA does not seek relief under Count II of its complaint related to 11 U.S.C. § 727(a)(4)(A).

Redmond secured the initial loan (and therefore also the two modifications thereafter) through materially false statements. ECF No. 1 ¶ 26.

On October 3, 2025, SBA served its Request for Production of Documents and First Set of Interrogatories upon Redmond. Exs. 1 & 2. That discovery sought, among other things, Redmond's bank statements and written responses to whether he used the loan for any purpose other than for Bene Market, as SBA issued the loan to Bene Market while Redmond was simultaneously running a virtually identical business named Seguro Medico. Redmond's responses to that discovery were due on November 3, 2025, but he never responded.

Following a stay of this matter, on May 12, 2026, SBA renewed its discovery requests. Despite representations from Redmond that he would respond to the discovery imminently, he instead filed a motion with the Court requesting another stay. ECF No. 46. In his motion, Redmond claimed that he cannot respond to discovery until he retained yet another substitute counsel in his criminal proceeding. *Id.* Only after Redmond's "not yet retained counsel" reviewed his responses "for Fifth Amendment considerations" would he respond.[2] *Id.* On June 5, 2026, the Court denied Redmond's motion and ordered him to provide discovery "without further delay." ECF No. 47. Redmond ignored the Court's order and did not respond to the discovery requests.

On June 30, 2026, despite Redmond's refusal to provide discovery, SBA's counsel informed the Court that it would proceed with a motion for summary judgment. As outlined below, SBA substantiates its motion with information from various sources,

---

[2] On September 22, 2025, a grand jury indicted Redmond, Bene Market, and certain other entities with 27 counts of wire fraud, conspiracy to commit wire fraud, and failure to pay taxes.

including Redmond's documentation and testimony provided informally by his prior counsel in this proceeding, information provided in his other related bankruptcy proceedings, and other publicly available information from other litigation. *See* Exs. 3-7.

### III.   ARGUMENT[3]

The Court should grant summary judgment and find that the debt owed to the SBA by Redmond is non-dischargeable under 11 U.S.C. § 523(a)(2)(B). That statute provides that debt is non-dischargeable if it was obtained through a statement in writing that (1) is materially false; (2) respects the debtor's financial condition; (3) was reasonably relied on; and (4) was made with intent to deceive. *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995) (summarizing § 523(a)(2)(B)). Each of these elements is satisfied here.

#### A.  Materially false statement regarding financial condition

A materially false statement is one that is both an "untruth" and is "capable of influencing, or had a natural tendency to influence, a creditor's decision [to extend credit]." *Id.* at 1115. Importantly, the creditor does not need to show that it "in fact reli[ed] upon [the false statement] in the case at hand," just that the statement would have been "predictably" relied upon. *Id.* at 1114 (emphasis and citations omitted).

Here, Redmond made false statements to SBA in his application and when he guaranteed the loan increases. He represented in his initial intake application to SBA

---

[3] Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Bankr. P. 7056 (incorporating Rule 56(a)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

that, as of July 2020, Bene Market earned $20,000,000 in gross sales within the prior 12 months (i.e., from July 2019 to July 2020). Ex. 3 at 1. But that representation is belied by Redmond's other documents and testimony, including:

1. Bene Market's internal "profit and loss statement" from January 2020 through December 2020. That document shows no actual income, but indicates that Bene Market's gross sales were $14.1 million, Ex. 4 (stating that Bene Market's "total expenses" were approximately $14.1 million, while its "net income" was a loss of $14.1 million [for a net of *zero dollars*]; and

2. Redmond's testimony that "the last payroll for Bene Market was . . . the last week of December 2019," after which Bene Market ceased operations, Ex. 5 at 2 (testimony in underlying bankruptcy proceeding); *see also* Ex. 6 at 2 (deposition testimony: "Bene Market started to wind down at the end of 2019, beginning of 2020"); and

3. Bene Market's K-1 tax filing from January 2019 through December 2019, which states that Bene Market's gross sales were over $16 million that year, Ex. 7 at 1.

Taking these representations together, it is not plausible that Bene Market had $20 million in gross sales in the 12 months prior to Redmond's loan application, as represented in that application. At best, Bene Market earned $16 million (still well short of the alleged $20 million) in sales from July 2019 through July 2020 (assuming his K-1 is accurate), and at worst, Bene Market was not in operation *at all* at the time he applied for loan.[4] Based on this information, Redmond's representation to SBA that $20 million in sales was false.

Considering his inconsistent testimony in multiple legal proceedings and Redmond's refusal to comply with discovery in this adversary proceeding – even in

---

[4] Moreover, on his intake application, Redmond represented that Bene Market had 135 employees as of July 2020. Ex. 3 at 1. However, Redmond stated in his prior testimony that nobody was on payroll beginning in December 2019. Ex. 5 at 2. And Bene Market's 2020 quarterly tax returns reflect 74 employees, far lower than the 135 claimed on its loan application. Ex. 8 at 1 (Bene Market 941 Quarterly Tax Return).

defiance of this Court's Order — the Court should conclude that Redmond purposely misrepresented Bene Market's income on his application, and by extension the two increases in the loan amount. Moreover, the public record is replete with Redmond's opaque and dishonest business practices. *See Su v. Bene Mkt., LLC,* No. CV 20-4265, 2024 WL 1181447, at *1 (E.D. Pa. Mar. 19, 2024) (finding Redmond personally liable for wage fraud, and noting that "[t]here were only three employees on Bene Market's first payroll that were not on NBOA's last"); *United States v. Arthur Walsh,* 5:24-cr-00376-JLS, June 5, 2026, Government's Change of Plea Memorandum, https://www.justice.gov/usao-edpa/media/1445586/dl?inline ("During the indictment period, that is, from January 2018 until early December 2022, defendant Alan Redmond operated a nationwide telemarketing fraud scheme from a call center near Reading, Pennsylvania. Through a group of companies that included defendants Bene Market LLC and Seguro Medico LLC, among other entities[.]").

Redmond's false statements are also material. A debtor's financial condition and whether it is a viable business are critical considerations for a creditor in issuing a loan. *See In re Kilaru*, 552 B.R. 806, 811 (Bankr. N.D. Ill. 2016) (finding that financial statements regarding whether a company is a "viable business" are material). Indeed, deprived of accurate information as to Bene Market's viability, SBA could not evaluate whether Bene Market qualified for the loan or the appropriate amount. Accordingly, there can be no reasonable dispute that Redmond's misrepresentations were "capable of influencing" SBA's decision to grant the loan (and therefore subsequent modifications on that loan).

6

### B. Reasonable reliance

"The reasonableness of a creditor's reliance under § 523(a)(2)(B) is judged by an objective standard based upon the degree of care which would be exercised by a reasonably cautious person in the same business transaction under similar circumstances." *Adesanya*, 630 B.R. at 452. In evaluating this factor, courts must consider whether the creditor "follow[ed] it[s] normal business practices," whether it performed "a commercially reasonable investigation of the information supplied," and "whether there existed a red flag." *In re Cohn*, 54 F.3d at 1114.

Creditor SBA is a government component created to support, through various types of loans, small businesses. Redmond obtained a Covid disaster relief loan by misrepresenting the gross income of one of his companies, Bene Market. Due to the exigency of its Covid relief loan program, it was necessary and reasonable for SBA to rely on debtor's representations.

### C. Intent to deceive

"Because a debtor will rarely, if ever, admit that deception was his purpose, intent to deceive may be inferred from the totality of the surrounding facts and circumstances." *Adesanya*, 630 B.R. at 452. "In fact, a creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement of the debtor[.]" *Id.*

Redmond plainly had an intent to deceive because, at the very least, he had a reckless indifference to the accuracy of his application. As mentioned, Redmond made multiple inconsistent representations regarding Bene Market's financial condition and its very existence as a functioning business entity, claiming in his 2020 application that Bene Market had $20,000,000 in gross sales, but later testifying under oath that it had

ceased operations entirely at the time of his 2020 loan application. *See* Ex. 5 at 2; Ex. 6 at 2. These facts establish a reckless indifference to the truth. *See, e.g.*, *In re Lundy*, 165 B.R. 157, 159, 163 (Bankr. W.D. Pa. 1994) (finding that debtor who "incorrectly portrayed his financial condition" had "intent to deceive" because he had an apparently "mistaken (and arrogant) belief that he did not have to be accurate" in representing his financial condition).

Additionally, following his initial misinformation to obtain the loan, Redmond has refused to provide information supporting the second increase of his loan, adding an additional $1,500,000 to his SBA debt in February 2022.

\* \* \*

In summary, Redmond made written statements on Bene Market's intake application that were materially false regarding its financial condition, were reasonably relied on, and were made with an intent to deceive. Those false statements also tainted all subsequent modifications to Redmond's loan.

This Court does not need to sift through Redmond's various statements and (mis)information to determine which, if any, are accurate. Rather, the multiple inconsistencies are enough to find that the information provided to SBA was false and intended to deceive. Accordingly, the Court should find that, based on a preponderance of the evidence, Redmond's debt to SBA is non-dischargeable under 11 U.S.C. § 523(a)(2)(B).

8

## IV.    CONCLUSION

For the reasons stated above, SBA respectfully requests that the Court enter summary judgment in favor of SBA on Count I of its complaint.

Dated: August 7, 2026                           Respectfully submitted,

                                                DAVID METCALF
                                                United States Attorney

                                                */s/ Mark C. Priebe*
                                                ANTHONY ST. JOSEPH
                                                MARK C. PRIEBE
                                                Assistant United States Attorneys
                                                615 Chestnut Street, Suite 1250
                                                Philadelphia, PA 19106
                                                (215) 861-8267/8412 (St. Joseph/Priebe)
                                                Anthony.StJoseph@usdoj.gov
                                                Mark.Priebe@usdoj.gov

9

## CERTIFICATE OF SERVICE

I certify that, on this date, I have filed the foregoing motion for summary judgment electronically with the Court and the document is available for viewing and downloading from the ECF System.


Dated:  August 7, 2026                    */s/ Mark C. Priebe*
                                          MARK C. PRIEBE
                                          Assistant United States Attorney

10