FILED

2026 SEP -3 PM 4:03

U.S. BANKRUPTCY COURT

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>ALAN CHRISTOPHER REDMOND,<br><br>Debtor. | Chapter 7<br><br>Bankruptcy No. 24-13093 (PMM) |
| UNITED STATES SMALL BUSINESS ADMINISTRATION,<br>Plaintiff,<br>v.<br>ALAN CHRISTOPHER REDMOND,<br>Defendant. | Adv. No. 25-00119 (PMM)<br><br>Hon. Patricia M. Mayer |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 54)

Defendant Alan Christopher Redmond, *pro se* in this adversary proceeding, responds in opposition to the Motion for Summary Judgment filed by the United States Small Business Administration ("SBA") (ECF No. 54, the "Motion"), pursuant to this Court's Order of August 17, 2026 (ECF No. 56). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I); consistent with his prior statement at ECF No. 46 ¶ 10, Defendant consents to the entry of final orders and judgments by this Court. For the reasons set forth in the accompanying Memorandum of Law, Counter-Statement of Disputed Facts, and Declaration, the Motion should be denied or, in the alternative, deferred under Fed. R. Civ. P. 56(d), made applicable by Fed. R. Bankr. P. 7056.

**Table of Authorities.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) · *Baxter v. Palmigiano*, 425 U.S. 308 (1976) · *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) · *In re Cohn*, 54 F.3d 1108 (3d Cir. 1995) · *Field v. Mans*, 516 U.S. 59 (1995) · *Grogan v. Garner*, 498 U.S. 279 (1991) · *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239 (3d Cir. 2013) · *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) · *SEC v. Graystone Nash, Inc.*, 25 F.3d 187 (3d Cir. 1994) · *United States v. Hubbell*, 530 U.S. 27 (2000) · 11 U.S.C. § 523(a)(2)(B) · 28 U.S.C. §§ 157(b)(2)(I), 1746 · Fed. R. Civ. P. 56(a), 56(d) · Fed. R. Bankr. P. 7056.

## MEMORANDUM OF LAW

## I. INTRODUCTION

1. SBA asks this Court to declare $1,950,000 of debt non-dischargeable under 11 U.S.C. § 523(a)(2)(B) on a paper record — without a deposition of the Defendant in this proceeding, without an affidavit from any SBA loan officer or underwriter, and while the Defendant awaits trial in a parallel federal criminal case arising from the same subject matter, *United States v. Redmond*, No. 5:24-cr-00376 (E.D. Pa.), in which jury selection is scheduled for January 11,

2027 and trial for January 12, 2027. Crim. ECF No. 168 (Order of Aug. 6, 2026) (Def. Ex. B).

2. Exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor, and SBA bears the burden of proving every element of § 523(a)(2)(B) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991); *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995).

3. The Motion fails on the record SBA itself has built. The Government's own filings and correspondence offer the Court nine different accounts of when Bene Market LLC supposedly ceased to exist — the most recent from SBA itself, in its Rule 26(f) report, which states that Bene Market's operations "ceased in 2022" (ECF No. 24 at 2 (Def. Ex. C)) — namely: **2018** (Compl., ECF No. 1 ¶¶ 16, 32); **December 2019** (Mot. at 5, 7); **operating in the first quarter of 2020** (Mot. Ex. 8, reporting $1,006,522.37 in taxable wages and $265,951.34 in quarterly employment tax); **operating through 2021** (Mot. Ex. 4, reporting $6,169,167.90 in 2021 operating expenses); **conducting business at the November 2020 loan and at both loan increases, through February 2022** (letter of SBA's counsel of record, Feb. 28, 2025, Def. Ex. A); **"It has not ceased operations"** (Defendants' Answers to Interrogatories, *Scalia v. Bene Market, LLC*, No. 5:20-cv-04265 (E.D. Pa.), served Apr. 7, 2021, Answer No. 5, produced by the United States in criminal discovery at RedmondTax000868–73); **forgiven in full by SBA itself** on its $925,200 Paycheck Protection Program loan on June 2, 2022 — a forgiveness that required SBA to find qualifying payroll expenditures; and, per the Answer of record, **operating "well into 2023"** (Answer, ECF No. 3 ¶¶ 16, 21). The one point on which this record is consistent is that SBA's account of it is not.

## II. COUNTER-STATEMENT OF DISPUTED MATERIAL FACTS

4. **These facts have been disputed since the pleadings closed.** The Motion proceeds as though its narrative were uncontested. Defendant's Answer denied that Bene Market ceased operations before receiving the loan proceeds, averred that "the loan proceeds obtained from the SBA were used for the ongoing operating expenses of Bene Market, LLC" (ECF No. 3 ¶ 19), objected that SBA relies on "several different 'portions' of transcripts and no transcript in full" (*id.* ¶¶ 16, 21), cited § 341 testimony that $1.1 million of 2021 income traced to Defendant's businesses (*id.*, citing 341 Tr. 53–55), and stated that Bene Market's filed 2022 tax returns confirm the company "was operating well into 2023" (*id.* ¶ 16). The Motion does not mention the Answer.

5. **SBA's own pleading and brief give conflicting timelines.** The Complaint alleges Bene Market "wound down" operations in or about 2018 (ECF No. 1 ¶¶ 16, 32). The Motion now asserts operations ceased at the end of December 2019 (Mot. at 5, 7). SBA's own Exhibit 7 — Bene Market's 2019 partnership return — reflects gross sales exceeding $16,000,000 for

calendar 2019 (Mot. at 5), a figure impossible for a company that wound down in 2018.

5A. **SBA agreed this is a records case, then moved without records.** In the parties' Joint Rule 26(f) Report of April 16, 2025, signed by SBA's counsel, the parties told the Court that "[t]his adversary matter will likely turn on the debtor/defendant's records." ECF No. 9 at 1 (Def. Ex. D). Six months later SBA's own Rule 26(f) report repeated that the matter "remains resolvable through record production from the defendant," placed the cessation of Bene Market's operations in 2022, and described SBA's actual theory as uncertainty over whether loan funds were "improperly used for Seguro Medico, LLC" — a use-of-proceeds question, not a false-financial-statement question. ECF No. 24 at 1–2 (Def. Ex. C). A movant that has told the Court the case turns on records it does not have cannot obtain judgment as a matter of law on a paper record of its own selection.

6. **SBA's Exhibit 4 does not say what the Motion says it says.** The Motion states that Exhibit 4 "indicates that Bene Market's gross sales were $14.1 million." Mot. at 5. Exhibit 4 contains no revenue line of any kind. The $14,126,480.65 figure is the line labeled "Total Expense" for 2020; "Net Income" is stated as negative $14,126,480.65 precisely because the schedule records no revenue at all. Mot. Ex. 4 at 2. The same page reports $6,169,167.90 in operating expenses for 2021, records "SBA Loan Proceeds Received" of $150,000.00 (2020) and $350,000.00 (2021), and states on its face: "All SBA funds were used to pay the above operating expenses." *Id.* A movant that reads an expense total as a sales figure has not established falsity as a matter of law; it has demonstrated why a trial is required.

7. **The application measured a trailing-twelve-month period that SBA's own exhibits show was substantially revenue-generating.** The application was created July 16, 2020 (Mot. Ex. 3 at 2) and called for gross revenues for the preceding twelve months — approximately July 2019 through July 2020. On SBA's own exhibits that window contains the second half of a $16-million sales year. Whether the trailing-twelve-month figure was materially false, as opposed to an estimate within the range SBA's own exhibits support, is a genuine dispute of material fact.

8. **The return SBA now measures the application against did not exist when the application was made.** SBA's Exhibit 7 bears a paid-preparer date of July 17, 2020 — the day *after* the application was created. Mot. Ex. 7 at 2; Mot. Ex. 3 at 2. The applicant could not have had the finished 2019 return in hand, and the inference SBA asks the Court to draw — that Defendant knew the return's figures and consciously overstated them — is unavailable on SBA's own chronology.

9. **SBA's "ceased operations" narrative is contradicted by SBA's Exhibit 8.** SBA asserts that "nobody was on payroll beginning in December 2019" and that "at worst, Bene Market

was not in operation at all at the time he applied." Mot. at 5 & n.4. SBA's own Exhibit 8 — Bene Market's Form 941 for the first quarter of 2020 — reports 74 employees, taxable Medicare wages of $1,006,522.37, and total employment tax of $265,951.34 for January through March 2020. Mot. Ex. 8. A company paying seven figures in W-2 wages in the first quarter of 2020 was operating in the first quarter of 2020. The movant's exhibits are in conflict with the movant's brief; that conflict is for the trier of fact.

10. **The deposition SBA filed as Exhibit 6 says payroll continued after 2019.** In the September 1, 2022 testimony SBA excerpts, Defendant stated: "Bene Market started to wind down at the end of 2019, beginning of 2020. Payroll continued for a couple of months after that . . . ." Mot. Ex. 6 at 3, ll. 11–13. In the same testimony SBA relies upon for the October 2024 date, Defendant explained that "winding down as a business owner . . . isn't just a decision overnight. It takes a year and a half, two years." Mot. Ex. 5 (Tr. Oct. 1, 2024) at 109:2–6. A gradual, multi-year wind-down of an advance-commission insurance sales operation is fully consistent with substantial trailing-twelve-month revenue in mid-2020 and with the 2020 and 2021 expense figures on SBA's own Exhibit 4.

11. **The employee-count discrepancy is a disputed inference, not an established falsehood.** The application's headcount field asked for the number of employees "as of Jan 31, 2020" — not as of the July 2020 application date — and the answer given was 135. Mot. Ex. 3 at 2. SBA contrasts that figure with a quarterly return reflecting 74 W-2 employees. Mot. at 5 n.4. SBA's own Exhibit 4 carries separate line items for agent expenses and contract labor — workers who would not appear on a Form 941 at all. Whether a January 2020 headcount that included agents and contractors was false cannot be resolved against the non-movant on this record.

12. **SBA's counsel of record has acknowledged in writing that the company was operating at each loan event.** On February 28, 2025, Anthony St. Joseph, AUSA, counsel of record for SBA in this proceeding, wrote to Defendant's then-counsel: "I understand from the tax filings that BeneMarket was conducting business in that name when it obtained the initial $150,000 loan on 11/4/20, and it appears, both loan increases." Def. Ex. A. The same letter states that the Government's real focus is "how those funds were spent" — a use-of-proceeds question on which SBA has offered no evidence and which is not an element of § 523(a)(2)(B). The Motion's suggestion that Bene Market may have been "not in operation at all at the time he applied" cannot be reconciled with the Government's own contemporaneous reading of the same tax filings.

13. **The United States' criminal charging instrument presumes the same operations.** The operative indictment in No. 5:24-cr-00376 alleges a business enterprise operating from 2018 through 2022 and charges payroll-tax counts under 26 U.S.C. § 7202 premised on wages paid

in quarters after 2019. The same sovereign cannot carry a preponderance burden here on the theory that the company had ceased to exist while prosecuting Defendant on the premise that it operated and paid wages through 2022.

13A. **SBA's own PPP forgiveness and the Government's own discovery file contradict the Motion.** On June 2, 2022 — four months after the February 9, 2022 loan increase SBA now attacks — SBA notified Bene Market that its $925,200 Paycheck Protection Program loan was "fully forgiven." Decl. ¶ 6. PPP forgiveness is conditioned on documented payroll and operating expenditures during the covered period; SBA cannot have forgiven $925,200 of payroll-based debt to a company it now contends had no payroll after December 2019. And on April 7, 2021, while the EIDL was live and before either increase, Bene Market answered interrogatories in the Department of Labor's own action stating that it "has not ceased operations" — a document the United States itself produced to the defense in the criminal case. Decl. ¶ 7. The Government's file contained the answer to the Motion's central question before the Motion was written.

## III. ARGUMENT

### A. Falsity Is Genuinely Disputed on SBA's Own Record

14. Summary judgment is proper only where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Under § 523(a)(2)(B) as construed in *Field v. Mans*, 516 U.S. 59, 66 (1995), and *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995), SBA must prove a writing that is materially false, respecting the debtor's financial condition, reasonably relied upon, and made with intent to deceive. For the reasons in Part II, SBA's own pleading, brief, exhibits, and counsel's written acknowledgment, together with the Answer of record, leave the trailing-twelve-month revenue figure, Bene Market's operational status, and the workforce figure genuinely disputed.

15. Summary judgment "will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable inferences are drawn in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Part II identifies record evidence — nearly all of it filed by the Government itself — from which a rational factfinder could find for Defendant on falsity, materiality, and intent.

### B. Intent to Deceive Is a State-of-Mind Question Not Amenable to Summary Judgment on This Record

16. Intent to deceive is a question of subjective state of mind; questions of intent and credibility are for the trier of fact, and at summary judgment the court may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255. Where the movant's own exhibits show $16 million in sales the prior year, seven figures in quarterly wages, and $6.17 million in operating expenses the following year; where the movant's own pleading places the wind-down a full year earlier than its motion does; where the movant has misread its own expense schedule as a sales figure; and where the return the movant relies upon post-dates the application — the inference of "reckless indifference" SBA seeks cannot be compelled as a matter of law.

**C. Reasonable Reliance Is Fact-Bound, and SBA Has Offered No Evidence of It**

17. Section 523(a)(2)(B) excepts from discharge only debt obtained by a materially false written statement "on which the creditor . . . reasonably relied." 11 U.S.C. § 523(a)(2)(B)(iii); *Field v. Mans*, 516 U.S. at 66. Under *Cohn*, reasonableness is measured objectively, including whether the creditor followed its normal business practices, conducted a commercially reasonable investigation, and heeded red flags. 54 F.3d at 1114. SBA offers no declaration, no underwriting file, and no witness — only attorney argument that pandemic exigency made reliance per se reasonable. The record points the other way: on January 31, 2022 — nine days before SBA approved the $1,950,000 increase — Bene Market's preparer transmitted to SBA's COVID EIDL increase-request unit, at SBA's request, "a copy of the 2019 business tax return (all pages and schedules)" in support of the increase. Def. Ex. F; Decl. ¶ 8. SBA therefore held the very 2019 return it now offers as Exhibit 7 before it extended the credit at issue. A creditor that obtained the borrower's return before lending cannot have reasonably relied on a superseded estimate of the same year, and its reliance — if any — is a fact question on which SBA has offered nothing. Whether reliance without any stated verification was objectively reasonable is a question of fact SBA has not attempted to prove.

**D. Defendant's Position on Discovery Has Been Consistent and Has Been Vindicated by the District Court**

18. The Motion leans on Defendant's non-response to discovery and derides his statement that responses required review by criminal counsel. Mot. at 3. Events have overtaken that rhetoric. On August 3, 2026, Benjamin B. Cooper, Esquire entered his appearance for Defendant in the criminal case (Crim. ECF Nos. 162–164), and on August 6, 2026 — the day before SBA filed this Motion — the District Court continued the criminal trial to January 12, 2027 expressly so that new counsel may "review the discovery, make any necessary motions, and withdraw any pro se motions he deems necessary, no later than October 15, 2026." Crim. ECF No. 168 (Def. Ex. B). The United States agreed. *Id.*

19. Nor is Defendant the source of this proceeding's pace. This Court stayed pretrial deadlines in April 2025 (ECF No. 10) and again upon prior counsel's withdrawal (ECF No. 16). The only party to have *moved* to stay this adversary proceeding is SBA, which told the Court on February 13, 2026 that if the main case were dismissed "this adversary will become moot." ECF No. 32 at 2 (Def. Ex. E); ECF No. 33. The discovery SBA now says went unanswered was served on October 3, 2025 (ECF No. 24 at 1) — eleven weeks after the Court had relieved Defendant's counsel and stayed the case for him to find new counsel (ECF No. 16) — and SBA then stayed its own case four months later. The pace SBA complains of is SBA's own.

20. SBA's discovery asks Defendant to identify the accounts that received the loan proceeds and to state how funds were used — subject matter that overlaps the pending indictment. Compelled production of such materials can itself be testimonial. *United States v. Hubbell*, 530 U.S. 27, 36–38 (2000). An adverse inference from invocation of the Fifth Amendment is permissible in a civil case but cannot alone satisfy the opposing party's burden of proof, *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), and courts exercise discretion to minimize the prejudice to a party forced to choose between the privilege and his civil defense, *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190–94 (3d Cir. 1994). SBA cannot substitute constitutionally protected silence for affirmative proof of falsity, reliance, and intent — particularly where its own exhibits supply the dispute.

**E. In the Alternative, the Court Should Defer the Motion Under Rule 56(d)**

21. Under Fed. R. Civ. P. 56(d), where the non-movant shows by declaration that it cannot present facts essential to justify its opposition, the Court may defer or deny the motion or allow time to obtain discovery. The facts essential to a full merits opposition — Bene Market's month-by-month revenues from July 2019 through July 2020, the deposit and use of loan proceeds, and Defendant's state of mind — are precisely the facts Defendant cannot address by declaration without compromising his Fifth Amendment privilege in advance of the January 12, 2027 trial. The accompanying Declaration sets forth these facts. *See also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013).

22. Deferral matches how this Court and the parties have already managed the criminal–civil collision: this Court stayed Adversary No. 24-00145 on June 30, 2026 (AP 24-00145, ECF No. 67), this Court has already canceled the October 27, 2026 pretrial conference pending resolution of this Motion (ECF No. 56), and the District Court has reset the criminal trial with the Government's agreement. Defendant respectfully proposes that (a) consideration of the Motion be deferred until conclusion of the criminal trial; (b) the Joint Pretrial Statement deadline of October 6, 2026 (ECF No. 52) be held in abeyance; and (c) Defendant serve his discovery responses, including the November 2020–April 2022 bank records SBA's counsel identified as the core of this matter (Def. Ex. A), promptly following completion of the Fifth

Amendment screening contemplated by the District Court's October 15, 2026 checkpoint.

**IV. CONCLUSION**

23. SBA's pleading, brief, and exhibits present conflicting timelines its own record cannot reconcile; its central revenue figure is an expense total; the return it measures the application against post-dates the application; its counsel's own words contradict the Motion's premise; the pleadings have disputed these facts since March 2025; and the adverse-inference bridge SBA needs is constitutionally unavailable as a sole basis for judgment. The Motion should be denied or, in the alternative, deferred pending conclusion of the trial in No. 5:24-cr-00376, with the adversary schedule conformed accordingly.

**Defendant's Exhibits:** Ex. A — Correspondence of Anthony St. Joseph, AUSA, Feb. 28, 2025 · Ex. B — Order, *United States v. Redmond*, No. 5:24-cr-00376, ECF No. 168 (Aug. 6, 2026) · Ex. C — SBA's Report of Rule 26(f) Meeting, ECF No. 24 (Oct. 24, 2025) · Ex. D — Joint Report of Rule 26(f) Meeting, ECF No. 9 (Apr. 16, 2025) · Ex. E — SBA's Motion to Stay, ECF No. 32 (Feb. 13, 2026) · Ex. F — Email to SBA COVID EIDL Increase Requests, Jan. 31, 2022, transmitting 2019 business tax return.

Dated: September 3, 2026

Respectfully submitted,

/s/ Alan Christopher Redmond
Alan Christopher Redmond, Defendant, *pro se*
2005 Regency Drive, Wyomissing, PA 19610
alanredmond23@gmail.com

The Debtor/Defendant reserves all rights, privileges, and defenses afforded under the United States Constitution, including those under the Fifth Amendment, in all proceedings. Nothing in this filing constitutes a waiver of any right or defense in any proceeding, including Case No. 24-376 (E.D. Pa.).